No. 4883.

(Court of Appeal, Parish of Orleans).

## CRAWFORD G. HOLIFIELD vs. GENERAL DEVELOPMENT COMPANY, LIMITED.

R. H. Marr for plaintiff and appellant.

A. W. Cooper, Bernard Bruenn for defendant and appellee.

GODCHAUX, J.—Plaintiff, according to his petition, sues on a contract of employment as broker of date June 22, 1908, to effect the exchange of the property of defendant for other property known as No. 1325 Calhoun Street, and alleges that though he had secured the consent of the owner of the Calhoun Street property to make the exchange, the defendant declined to comply with his part of the transaction. Claiming that he has thus performed his contract, he sues for the recovery of a fixed and agreed commission of two thousand ($2,000.00) dollars, and the defense is substantially a denial of the contract of employment.

It will elucidate matters by stating that the exchange of the properties was, in fact, never consumated; so that plaintiff's right of recovery, if any exists, must be based upon the proposition that, having been employed by defendant on June 22, 1908, to procure the exchange, and having, pursuant to that employment, secured the consent of the owner of the Calhoun Street property to make the exchange, he is entitled to his commission, even though the exchange was never effected, since the failure to do so is chargeable solely to the act of the defendant whose refusal to exchange cannot operate to defeat his rights.

On the trial below, and in brief and argument in this court, plaintiff insisted and sought to establish, contrary to the express allegation of his petition, that an oral employment dating long prior to June 22, 1908, existed. Without discussing whether, under the pleadings and in view of the admission of testimony on that subject without objection, his cause of action could be thus varied or enlarged, this claim of a prior oral contract can be dismissed with the statement that, prior to June 17, 1908, the negotiations between plaintiff, on the one hand, and Huston and Lynn, officers of the defendant company, on the other hand, relative to the exchange of the properties,

evidenced a transaction in which the two latter were acting and interested in their individual capacities and not as representatives of the corporation. Prior to June 17, 1908, the company was never formally advised of any contemplated exchange. These two parties were seeking to acquire personally the entire outstanding stock of the defendant corporation, and were treating with Holifield for an exchange of the properties with a view of individually reaping (indirectly, it is true, by their acquisition of the entire capital stock) any profit or advantage that might result from the exchange. Their efforts to acquire the stock having failed, they then concluded to submit the subject of the exchange and the employment of plaintiff to the company for its consideration, and as an advantageous proposition to it and its stockholders generally. In so far as the rights of the parties to this litigation are concerned, the transaction should and will be considered as beginning at this point, and what previously transpired must be ignored.

When it was concluded to submit the matter to the company, Holifield insisted that his contract of employment as broker, as well as the authority from the company, to effect the exchange, be evidenced in writing, and be passed upon formally by the Board of Directors. To this end he drafted two documents dated June 17, 1908, one in the form of a letter addressed to himself, to be signed by the defendant, through its president (as evidenced by the form of the document itself), wherein, after reciting the employment of plaintiff for a term of ten days to effect the exchange of the properties on a commission of two thousand ($2,000.00) dollars, it is provided that the amount of the commission shall, as soon as the agreement, as distinguished from the final notarial act, of exchange is signed be deposited in trust in some bank until the transaction of exchange is finally consumated. The other document which, from its character

required and on its face contemplated, the signature of the defendant corporation, through its president, was in the form of an offer to exchange the properties, stating the precise terms and conditions that should govern the transaction in all its details and concluding by the recital that "this offer will hold good until 12 o'clock, June 18, 1908."

No meeting of the Board was held until June 20, 1908, when, these documents having been submitted for approval and for the grant of the requisite authority of the President to execute same, the date of each was changed to June 22, 1908; the letter to Holifield was, among other things, altered by eliminating entirely the clauses as to the deposit in trust of the amount of the commission and as to the ten-day term of employment; and the draft of the offer of exchange was amended so as to provide that said offer "shall hold good until 12 o'clock, June 23, 1908." In all other respects essential to this controversy the two documents were allowed to remain unchanged and were embodied in the minutes in the following manner:

"On motion, * * * seconded, * * * it was resolved that the President be authorized to make the following offer to C. G. Holifield, representing the owner of the property, No. 1325 Calhoun Street, New Orleans":

(Here follows in full the form of the offer of exchange drafted by Holifield, as amended by the Board in the respects above recited.)

"Carried."

"On motion, * * * * seconded, * * * it was resolved that the President, R. C. Huston, be authorized to make the following offer to C. G. Holifield to pay him a commission in the event the above exchange is finally consumated:"

— 171 —

(Here follows the letter of employment drafted by and addressed to Holifield, as amended by the Board in the respects above recited.)

"Carried."

At this point it is pertinent to state that the Court finds from the foregoing facts, as well as from others disclosed in the record, two things to be true:

**First,** that the draft of proposals covering respectively plaintiff's employment and the exchanges, though contained in separate documents, as the necessity of the case clearly required, constitute legally one single instrument and the provisions of the one must be considered in connection with and read into the other as part and parcel thereof—the result of which is, among its other effects, to constitute, as far as plaintiff is concerned, these instruments, when signed as contemplated, a proposal to employ plaintiff on a fixed commission of two thousand ($2,000.00) dollars, to secure, on or before "twelve o'clock, June 23, 1908," a valid acceptance of the offer of exchange on the part of the owner of the Calhoun Street property. Plaintiff's contention that the term of his employment was based upon the offer of exchange, is wholly untenable and contrary to the evident intention and understanding of the parties.

**Second,** that it was within the clear intention and contemplation of the parties that neither the employment of plaintiff nor the offer of exchange or the instruments drafted to evidence them should be binding or complete until written instruments evidencing these transactions should be drafted and should be signed at least by or on behalf of the defendant corporation.

In as much as neither instrument was ever signed by plaintiff or defendant or by the owner of the Calhoun Street property, these considerations become essential in the case, for plaintiff pleads the existence of the con-

tract of employment, notwithstanding the lack of signatures.

The Directors' meeting occurred on Saturday, and on the Monday morning following—namely, June the 22, 1908—Huston, the President, submitted to Holifield, the two instruments as such, modified, by the Board, but wholly unsigned by the company, Holifield at once pronounced both documents unacceptable to him and returned them to Huston, declaring that his real contract of employment, was a verbal one, the terms of which he had expressed in the draft of latter date, June 17th, prior to its amendment by the Board at its meeting of the 20th, and refusing particularly to consent to the change therein made whereby the clause pertaining to the deposit in trust of the amount of the commissions was eliminated. He insisted that he knew the straightened condition of the company's finances, and that such a deposit in a transaction of exchange where no money passes was essential to assure him his compensation, and declared that he would proceed no further without such assurance. Huston clearly had no authority to insert such a condition nor to vary in the slightest degree the proposal he was authorized to execute by the Board, and accordingly, he left Holifield's office taking both documents with him.

Considering the transaction at this stage of the proceedings, and in view of the fact that plaintiff had no agreement whatever as to the employment prior to June 17th, and for the further fact that his proposal or tender of contract as embodied in his letter of the 17th, was rejected by the Board, while he, himself, on the 22nd expressly rejected the company's counter-proposal, it is apparent that to this point no contract of employment has been established. Moreover, in as much as the company's proposal, which he had thus rejected, would elapse the following day—namely, ''twelve o'clock June

23d," it follows that in order to prove any employment and his right to compensation, he must establish both an acceptance of that proposal of employment and of the company's offer of exchange within the time stated.

As supplying this proof plaintiff points first to a meeting which he arranged for at the office of Mr. Wall, the husband of the owner of the Calhoun Street property, Mr. Wall, Mr. Huston, Mr. Lynn and the plaintiff being present, at which meeting Mr. Wall, on being shown by Holifield the draft of offer of exchange, still unsigned on behalf of the defendant corporation, stated he was willing to sign and accept it on behalf of his wife, whose power of attorney he held, if Huston would sign it for the company; and, thereupon, "Mr. Huston said he couldn't sign it." Such is plaintiff's version of the interview, and it is contended upon his part that it occurred on Tuesday, June 23d, prior to 12 o'clock, but neither plaintiff's testimony itself, nor that of any of his witnesses, except Mr. Wall, fixes it upon that or a prior date; while defendant's witnesses establish to the Court's satisfaction that it occurred several days later, and consequently Mr. Wall must have been mistaken in respect to the precise date.

But even if the Court should consider this interview as having transpired on the 23d, before 12 o'clock—that is, before the limit fixed had expired by limitation—the circumstances under which the interview took place, as well as what occurred there, rendered it wholly inefficient to accomplish the result that plaintiff must necessarily rely upon to establish his claim—that is, a valid proposal and acceptance of the contract of employment.

In the first place, up to the time of this conference, plaintiff had not apparently changed his attitude in respect to declining to accept the company's terms of employment, and, in fact, at no time, not even at this conference, was that phase of the transaction affecting his employment mentioned, nor was the company's proposal

of employment then, or at any other time, signed by the president on its behalf, or by plaintiff. In order for this interview to have the effect claimed for it by plaintiff, then the Court must hold that because Mr. Wall signified his willingness to make the exchange, then the necessity of a renewal of the proposal of employment as well as the necessity of the signing of this proposal was dispensed with without any other act by either party to evidence such an intention, and notwithstanding the fact that it was at all times clearly intended that that instrument required signature in order to make it effective.

In the second place, Holifield, without having signified as yet his intention of accepting the company's terms of employment and encountering Mr. Lynn and Mr. Huston accidently upon the street, induced them to go to Mr. Wall's office with him on this occasion, upon the pretense or plea that he desired to confirm to them that Mr. Wall was ready to sign the exchange proposal. However, both Mr. Huston and Mr. Lynn made it clear in evidence that they would not and did not attend that meeting officially or as representatives of the company, but solely as individuals, stipulating in effect that the company was not to be bound or prejudiced by anything that might occur at the conference. Even if the company's proposal of employment with the necessary signature of its president upon it had been mentioned at this meeting, it is more than doubtful whether the effect of the meeting, considering the circumstances under which it was held and the reservations made by attending officers of the company, could be construed as a tacit acceptance of the company's terms of employment—even conceding that such character of acceptance would be legally sufficient to convert the proposal into a contract. Moreover the conviction pervades the Court that Holifield, being wholly without confidence of the ability of

the company to pay his commissions when earned, expressed and had no intention of dealing with it unless and until it complied with his demand as to placing the amount of the commissions in trust, and this conference, which, in the Court's judgment, in fact, took place after the offer of employment and exchange had expired by limitation, was contrived solely for the purpose of lending color to the purported claim which the plaintiff was then contemplating, and is now seeking to judicially enforce.

Finally, the plaintiff relies upon his letter of June 24, addressed to defendant, as establishing his acceptance of the employment, but this claim may be dismissed with the statement that the time for acceptance had expired.

On the whole, while it is perhaps true that plaintiff was in a position to effect the exchange, he was opposed to doing so without exacting of the defendant conditions as to his compensation that the defendant was unwilling to accede to. As a result the company's offer was allowed to lapse by limitation, and this lapse the company willingly and perhaps somewhat eagerly, but at least effectively availed itself for the purpose of withdrawing from negotiations which it then apparently repented of having opened.

The lower Court evidently reached a like conclusion, and its judgment dismissing plaintiff's demand is accordingly affirmed.

Judgment affirmed.